IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSÉ CRUZ                                       :
     Petitioner,

     v.                                       :                    CIVIL ACTION
                                      NO. 14-4510

STEPHEN GLUNT, et al.
     Respondents.                           :

## MEMORANDUM

**Jones, II      J.**                                              **September 28, 2016**

    **I.**     **Introduction**

      Petitioner José Cruz was convicted of the first degree murder of Gary Williams in the

Lehigh County Court of Common Pleas on December 8, 2005 and was sentenced to life without

parole on January 9, 2006. (No. CP-39-CR-3705-2004; Trial Tr. vol. 4, 884.)  Petitioner now

seeks habeas relief from his State Court conviction. Pursuant to Local Civil Rule 72.1.IV(c), the

matter was referred to United States Magistrate Judge Thomas J. Rueter for a Report and

Recommendation ("R&R"). Judge Rueter issued an R&R denying Petitioner's request for relief

and Petitioner filed objections thereto, which are presently pending before this Court.  For the

reasons set forth below, Petitioner's objections shall be denied.

    **II.**     **History**

        **A.**     **Factual Background**

      The following facts are supported by evidence presented at trial:

      In September 2001, an individual named Gary Williams agreed to sell Petitioner a 1991

Honda Accord on the condition that only Petitioner and his girlfriend would drive the vehicle.

(Trial Tr. vol. 2, 317; Trial Tr. vol. 3, 605.) The terms of sale were never finalized because

1

Petitioner failed to attend a scheduled meeting at the notary's office to transfer title of the car. (Trial Tr. vol. 2, 321.) As a result, Williams confronted Petitioner regarding his absence at the meeting. (Trial Tr. vol. 2, 321, 338.) The interaction escalated and Petitioner, who was illegally carrying a handgun, fired warning shots into the ground, one of which struck Williams in the foot. (Trial Tr. vol. 2, 306, 321, 324.) Thereafter, Petitioner refused to return the car to Williams. (Trial Tr. vol. 2, 324.)  Williams became angry and made several threats against Petitioner, culminating on February 1, 2002. (Trial Tr. vol. 2, 325; Trial Tr. vol. 3, 330, 340.) On that evening, Williams contacted a family friend named James "Biddy" Douglas and explained that he wanted to fight Petitioner and needed back up. (Trial Tr. vol. 2, 357.) Douglas, who lived in Reading, Pennsylvania, drove to Allentown, Pennsylvania to assist Williams. (Trial Tr. vol. 2, 359.) The two men met at Banana Joes Bar, where they spotted Petitioner, along with two of his friends – Marcus Suarez and Khadiffi Miller. (Trial Tr. vol. 2, 260, 363, 380.) Williams approached and punched Petitioner's vehicle in an apparent attempt to open Petitioner's door. (Trial Tr. vol. 2, 363.) As Petitioner sped off, Williams and Douglas gave chase in Douglas's vehicle. (Trial Tr. vol. 2, 366.) Williams and Douglas eventually lost sight of Petitioner. (Trial Tr. vol. 2, 367.) This prompted a call between Williams and Petitioner to make arrangements to meet at a nearby 7-Eleven store to fight. (Trial Tr. vol. 2, 371, 373.)

Between 1–2 a.m. on February 2, 2002, Williams and Douglas met Petitioner, Suarez and Miller behind the 7-Eleven store for the purpose of engaging in a fist fight. (Trial Tr. vol. 2, 374, 381.) Petitioner, Suarez and Miller were armed. (Trial Tr. vol. 2, 381, 384.) However, before the fight began, Petitioner placed his .38 caliber handgun on the ground. (Trial Tr. vol. 2, 384.) After two or three rounds of fighting, either Suarez or Miller said to Petitioner "bang that pussy," in reference to Williams. (Trial Tr. vol. 2, 390.) Petitioner picked up his handgun and shot at

2

Williams and Douglas. (Trial Tr. vol. 2, 393.) Williams and Douglas ran in opposite directions around the 7-Eleven in an effort to flee but Petitioner continued to fire his weapon. (Trial Tr. vol. 2, 393.)  Williams was struck in the back and thigh, and died as a result of a gunshot wound to his chest. (Trial Tr. vol. 3, 552.)

### B.     Procedural Background

### i.     Direct Appeal and Pennsylvania Post Conviction Relief Act Appeal

Petitioner appealed his conviction of first degree murder.  On March 5, 2007, the Superior Court of Pennsylvania affirmed the lower court's decision. *Commonwealth v. Cruz*, 919 A.2d 279 (Pa. Super. Ct. 2007).  Petitioner then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court and was denied allocator on July 26, 2007. *Commonwealth v. Cruz*, 928 A.2d 1289 (Pa. 2007).

On January 29, 2008, Petitioner filed a timely *pro se* petition pursuant to the  Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, *et seq*. Thereafter, Counsel was appointed and on December 23, 2008, filed an Amended PCRA Petition, followed by a Supplemental Amended PCRA Petition on January 20, 2010.  Petitioner sought leave to amend the petition again and new counsel was appointed. On February 25, 2011, counsel filed a Second Amended PCRA Petition, as well as a Brief in Support thereof three days later.  Petitioner's request for relief was ultimately denied by the Honorable Carol K. McGinley on December 19, 2011. *Commonwealth v. Cruz*, CP-39-CR-003705-2004, slip. op. (Ct. Com. Pl. Dec. 19, 2011).[1] Thereafter, Petitioner was appointed new counsel for purposes of appealing the PCRA court's decision.

---

[1] On or about April 1, 2012, the matter was transferred to the Honorable Douglas G. Reichley, who authored an Opinion setting forth the reasons for denial of Petitioner's Second Amended PCRA Petition.

On November 26, 2013, the Superior Court affirmed the PCRA court's ruling and on

May 21, 2014, the Pennsylvania Supreme Court denied allocatur. *Commonwealth v. Cruz,* 2013

Pa. Super. Unpub. LEXIS 1075 (Pa. Super. Ct. 2013), *appeal denied*, 92 A.2d 810 (Pa. 2014).

### ii.     Petitioner's Habeas Claims

In accordance with 28 U.S.C. § 2254, Petitioner timely filed the instant *pro se* habeas

action on July 28, 2014 ("§2254 Petition").  His grounds for relief are as follows:

1.     The evidence was insufficient to sustain the conviction for first-degree
       murder beyond a reasonable doubt; and,

2.     Ineffective assistance of counsel which undermined the reliability of the
       adversarial process:

   i.     Trial counsel failed to file a motion *in limine* to preclude evidence
          of prior bad acts, introducing evidence of prior bad acts himself,
          and failing to request a cautionary instruction with respect to the
          prior bad acts;

   ii.    Trial counsel failed to object to incidents of prosecutorial
          misconduct, in which the prosecutor questioned the Petitioner
          about his mode of dress and patterns of speech, and made
          statements about these subjects during closing arguments;

   iii.   Trial counsel failed to object to the trial court's jury instruction
          giving a permissive inference that the intent to kill could be
          concluded if the deceased was shot in a vital part of the body;

   iv.    Trial counsel failed to investigate Petitioner's psychiatric history
          and present a diminished capacity defense;

   v.     Trial counsel failed to investigate and call several witnesses on
          Petitioner's behalf;

   vi.    Trial counsel failed to request a jury instruction on the legal effect
          of the prior inconsistent statements of James Douglas and Nelissa
          Morales;

   vii.   Trial counsel failed to request a jury instruction regarding the
          possible of [sic] verdict of "unreasonable belief" voluntary
          manslaughter and objecting to the instruction on provocation,
          which was not supported by the record;

4

viii. Trial counsel failed to request that the trial court sequester Commonwealth witnesses, Nelissa Morales and Lisa Williams; and,

ix. Trial counsel failed to present a comprehensive request for a new trial based on the fact that the conviction for first-degree murder was against the weight of the evidence.

(§2254 Pet. 6-7A.)

Thereafter, Petitioner filed a Memorandum of Law in Support of his §2254 Petition and the District Attorney for Lehigh County filed a Response, arguing that most of Petitioner's claims were procedurally defaulted and all were without merit. Petitioner replied on June 24, 2015.

### iii.    Report and Recommendation / Petitioner's Objections

On October 21, 2015, Magistrate Judge Rueter issued his R&R, in which he determined that all of the claims presented were without merit or were procedurally defaulted. As referenced above, Petitioner objected to nine of the ten issues ruled upon by the Magistrate Judge. The Commonwealth responded to Petitioner's Objections on March 28, 2016 and Petitioner replied on May 4, 2016. The matter is now ripe for review by this Court.

### III.    Standards of Review

### A.    Objections to Report and Recommendation

When objections are filed to the R&R of a Magistrate Judge, the District Court must conduct *de novo* review those portions of the R&R to which objection is made. 28 U.S.C. §636(b)(1). If there are no objections to the R&R or when reviewing those portions of the R&R to which no objections are directed, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Oldrati v. Apfel,* 33 F. Supp. 2d 397, 399

(E.D. Pa. 1998) ("In the absence of a timely objection . . . this Court will review [the Magistrate's] Report and Recommendation for 'clear error.'") (citations omitted).

### B.      Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus. In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

By means of the AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied in order for a prisoner to prevail on a habeas petition. The strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a State Court judgment unless the petitioner first has exhausted his available remedies in State Court.") (citing 28 U.S.C. § 2254(b)(1). Petitioner must have "fairly

presented" the federal habeas claims to the State Courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas, Delaware County, Penn.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the State Courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner in Pennsylvania must appeal such claims to the Pennsylvania Superior Court. *Whitney v. Horn*, 280 F.3d 240, 250 n. 10 (3d Cir. 2002).[2] Petitioner carries the burden of proving exhaustion. *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in State Court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or, that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). The "prejudice" requires, the "petitioner [to] prove 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 193 (quoting (quoting *United States v. Frady*, 456

---

[2] *See also In re Exhaustion of State Remedies in Criminal & Post-Conviction Relief Cases*, 471 S.E.2d 454 (1990) ("[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.") The Third Circuit recognized the validity of this Order in *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

U.S. 152, 170 (1982)). Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### C.  Merits Review

Where Petitioner's claims were adjudicated on the merits in State Court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of State Court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if: (1) the State Court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or, if (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)-(2). When a claim has been adjudicated on the merits in State Court, federal habeas review is limited to the record before the State Court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

### D.  Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove that counsel was ineffective, Petitioner must establish that: (1) counsel's performance was constitutionally deficient; and, (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the

presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

## IV.   Discussion

Petitioner herein has raised objections to the R&R regarding all but one claim. This Court addresses each in turn.

### A.   Petitioner's claim that the evidence at trial was insufficient to sustain a conviction for first degree murder beyond a reasonable doubt is procedurally defaulted.

Petitioner's first objection pertains to sufficiency of the evidence.  (Objs. 2.) In Claim One of his § 2254 Petition, he alleged that the evidence at trial was insufficient to sustain a conviction of murder in the first degree. (§ 2254 Pet. 6.) However, Petitioner did not argue this claim on appeal to the Superior Court; a prerequisite for federal habeas review. (App. Br. 5-12); *see also* 28 U.S.C. § 2254(b)(1)(A). Therefore, the claim is unexhausted and state courts cannot review it because it is barred by the one-year statute of limitations pertaining to the filing of second PCRA petitions. 42 Pa. Cons. Stat. § 9545(b)(1). Furthermore, Petitioner has not provided this Court with an adequate explanation for his failure to properly present this claim to the state courts. As a result, he has not shown cause to excuse his procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). For these reasons, this Court rules that the claim is unexhausted, procedurally defaulted, and there exist no exceptions to excuse the default.

### i.       Assuming, *arguendo*, petitioner's claim is not procedurally defaulted, the claim is meritless.

Under 28 U.S.C. § 2254(b)(2), this Court will review the merits of Petitioner's claim. The Magistrate found the Superior Court's sufficiency ruling binding on the court absent extraordinary circumstances. (R&R at 12.) The Magistrate also found that even if this Court was not bound by the State Court ruling, "the Superior Court's analysis of the sufficiency of the evidence was not objectively unreasonable." (R&R at 12.) However, Petitioner argues that: (1) the Magistrate "failed to review the factual and legal basis of [Petitioner's insufficiency of evidence] claim for relief[;]" and, (2) the Magistrate failed to evaluate the Superior Court decision under § 2254(d). (Objs. 2-4.)

As discussed above, the AEDPA requires judges to be deferential to State Court decisions that were adjudicated on the merits. Adjudication on the merits occurs when the State Court has made a decision that: (1) finally resolves the claim; and, (2) resolves the claim based upon its substance, rather than on procedural grounds. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

The Fourteenth Amendment's Due Process Clause "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (U.S. 1970)). Evidence is considered sufficient to uphold a conviction where "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 307). When a federal court conducts its review, it "must look to state law for 'the substantive elements of the criminal offense.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 324 n.16). A habeas petitioner is only entitled

to relief on the grounds of insufficient evidence where "no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

With specific regard to the deference given to earlier State Court determinations, "a federal court may not overturn a State Court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the State Court. The federal court instead may do so only if the State Court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. at 2 (quoting *Renico v. Lett*, 559 U.S. 766 (2010) (internal quotation marks omitted)).

In this matter, the Pennsylvania Superior Court addressed sufficiency of the evidence as follows:

> A defendant is guilty of first degree murder when, with the specific intent to kill, he causes the death of another person. See *Commonwealth v. DeJesus*, 584 Pa. 29, 880 A.2d 608, 611 (2005). In the present case, Cruz contends that the Commonwealth failed to present sufficient evidence to support an inference that he acted with premeditation and a specific intent to kill. Cruz argues that the evidence of the mutual agreement to fight, combined with Williams's behavior in stalking Cruz, better supports a conviction of third degree murder. However, it is well established in Pennsylvania that a fact finder may infer malice and a specific intent to kill from the use of a deadly weapon upon a vital part of the victim's body. *Id.* Evidence that the defendant shot the victim in the back with a handgun is sufficient to permit an inference of malice and specific intent to kill. *Id.*, at 613. Accordingly, Cruz's first issue on appeal merits no relief.

*Commonwealth v. Cruz*, 919 A.2d 279, 281 (Pa. Super. 2007).

Because Petitioner's claim was adjudicated on the merits, the Superior Court decision is appropriately entitled to deference. As a result, the Magistrate correctly applied the deferential standard of review to this claim.

Petitioner argues that the Superior Court decision is not entitled to deference because "the decision was based on an unreasonable determination of the facts in light of the evidence

11

presented in the State Court proceeding." (Objs. 4) (internal quotations omitted).  However, a federal court may overturn a State Court decision only if said decision was "objectively unreasonable." *Johnson*, 132 S. Ct. at 2062 (internal quotations and citations omitted). It is well established that the standard of review for sufficiency of the evidence claims employed by the Pennsylvania State Courts is aligned with federal requirements. *Eley v. Erickson*, 712 F.3d 837, 848-49 (3d Cir. 2013). This Court agrees with the Magistrate's finding regarding the standard applied by the Superior Court—whether the evidence viewed in the light most favorable to the Commonwealth was sufficient to establish the specific intent element of first degree murder is "virtually identical to that required by *Jackson v. Virginia*, 443 U.S. 307 (1979)." (R&R 11) (citing *Commonwealth v. Cruz*, 919 A.2d 279, 281 (Pa. Super. 2007)). As such, Petitioner's argument that the Superior Court unreasonably applied Federal law under §2254(d)(1) is without merit.

Petitioner's argument also fails under §2254(d)(2). Pennsylvania law provides that "[a] criminal homicide constitutes first degree murder when it is committed by an intentional killing." 18 Pa. Cons. Stat. Ann. § 2502(a). It is well settled in Pennsylvania that the specific intent to kill required for a conviction of first degree murder may be inferred from the use of a deadly weapon upon a vital part of the human body. *Commonwealth. v. Simpson*, 754 A.2d 1264, 1269 (Pa. 2000). *See also Commonwealth v. Ewing*, 264 A.2d 661, 663 (Pa. 1970) ("This Court has consistently held that the use of a gun on a vital part of the deceased's body raises the presumption that the defendant shot with the intent to kill the deceased.") (citations omitted). "[T]he inference or presumption that arises from the intentional use of a deadly weapon on the vital part of the body of another human being is merely a *factual* presumption." *Ewing*, A.2d at

663 (emphasis added). Because the claim was adjudicated on the merits in State Court, this

Court's review is limited to the record before the State Court. *Pinholster*, 131 S.Ct. at 1398-99.

At trial, the Commonwealth presented eyewitness testimony that Petitioner shot Williams

while he was running away. (Trial Tr. vol. 2, 393-94, 396-97.)  Additionally, a forensic

pathologist testified that a bullet hit Williams in the back, fractured his rib and then "passed

through the right lower lobe of lung, the right middle lobe of lung and the right upper lobe of

lung." (Trial Tr. vol. 3, 554.) The expert further testified that the gunshot "caused massive

bleeding inside both chest cavities," which, in turn, caused Williams' lung and breathing tubes to

collapse, and his tracheal bronchial tube to fill with blood and eventually clot. (Trial Tr. vol. 3,

555.) For these reasons, the expert determined that the cause of death was a "gunshot wound to

the chest."[3]

Given these facts, a rational jury clearly could have found that Petitioner had the specific

intent to kill required for a conviction of first degree murder. Therefore, the Magistrate's finding

that the Superior Court's analysis of the sufficiency of the evidence was not objectively

unreasonable is correct and Petitioner's objection is overruled.

## B.      Effectiveness of Counsel

Petitioner's second Objection pertains to nine alleged instances of ineffective assistance

of counsel. Contrary to Petitioner's assertion, the Magistrate properly reviewed his ineffective

assistance of counsel claim under a doubly deferential standard. When *Strickland* and §2254(d)

are applied "in tandem," their own "highly deferential" standards become "doubly" deferential.

---

[3] Specifically, the Assistant District Attorney asked the expert:
> Q: How, when you say chest, is that due to the fact that his lung was struck?
> A: Yes, it hit the best portion of the body. The lung – the right lung is in the chest cavity.
> Q: And I just want to – I ask that question just so there isn't any confusion. The fact that you say chest, isn't any indication that the bullet came from the front?
> A: No, the chest is in the front and the back, above the diaphragm.

(Trial Tr. vol. 3, 558.)

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citations omitted).  As a result, when reviewing a claim for ineffective assistance of counsel under AEDPA, "federal courts are to afford both the State Court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted); *see also Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 593 (3d Cir. 2015) ("[W]e apply a 'doubly deferential standard,' both as to whether counsel's conduct was reasonable as well as to the Pennsylvania Supreme Court's treatment of the issue.") (citing *Breakiron v. Horn*, 642 F.3d 126, 141-142 (3d Cir. 2011)).

In view of the foregoing, a doubly deferential standard applies to Petitioner's claim and this portion of the objection is overruled.

### i.      Prior Bad Acts

#### Weight of the Evidence

Although not presented as an objection, Petitioner contends that trial counsel's post-sentence motion arguing that the trial verdict was against the weight of the evidence ignored "many relevant and important facts" by focusing exclusively on the fight behind the 7-Eleven. (Pet'r's Mem. Law 36.) For this reason, Petitioner asserts that trial counsel was ineffective for "presenting such a narrow and limited weight of the evidence claim." (Pet'r's Mem. Law 36.) The Magistrate found that this claim was unexhausted, procedurally defaulted, and that *Martinez* did not provide an exception.  (R&R 26.)

The Pennsylvania Superior Court addressed Petitioner's weight of the evidence argument on direct appeal.  Before doing so, they reiterated the facts leading up to the shooting, beginning with the initial agreement by Petitioner and Williams in early 2001 regarding the sale and purchase of Williams' vehicle.  Said Court did not merely focus on the evidence pertaining to the fight behind the 7-Eleven store.  Upon review of the trial court's assessment of Cruz's weight of the evidence argument, the Superior Court ultimately determined that the verdict was not so contrary to the evidence as to shock one's sense of justice.  *See Commonwealth v. Cruz*, 919 A.2d 279, 282 (Pa. Super. 2007). Specifically,

the appellate court agreed with the trial court's finding that the jury was well within its province to believe the testimony of Douglas over that of Cruz—particularly when Douglas' testimony was supported by other substantial evidence of record that discredited Petitioner's claim of self-defense.  *Id.* at 282. Petitioner raised a weight of the evidence claim in his PCRA Petition.  However, when the PCRA court rejected same, Petitioner did not pursue the claim on collateral appeal.  *Commonwealth v. Cruz*, 2013 Pa. Super. Unpub. LEXIS 1075 (Pa. Super. Ct. 2013).  Assuming *arguendo* Petitioner could get over the exhaustion and procedural default hurdles, this claim would necessarily fail because subsequent counsel cannot be deemed ineffective for failing to raise a meritless claim.   The Superior Court's ruling regarding weight of the evidence was proper and will not be disturbed by this Court via a meritless ineffectiveness claim.

> ### a. Several of Petitioner's claims that trial counsel was ineffective for failing to preclude or object to bad acts evidence are procedurally defaulted

Petitioner argues that trial counsel was ineffective for "fail[ing] to file a motion *in limine* to preclude evidence of prior bad acts, introducing evidence of prior bad acts himself, and failing to request a cautionary instruction with respect to the prior bad acts." (§ 2254 Pet. 7A(1).) Specifically, Petitioner classifies the prior bad acts as:

> (1) a prior incident in which Petitioner shot [Mr. Williams] in the foot or ankle; (2) that [Petitioner] carried a firearm without a license; (3) that [Petitioner] dressed and talked differently outside the courtroom; (4) that [Petitioner] drove a car without a title, license plate, insurance, or a driver's license; and (5) that [Petitioner] had a prior conviction for robbery.

(Objs. 5; Pet'r's Mem. 12.)

Petitioner raised all five prior bad acts in his Second Amended PCRA Petition and in his Brief in Support thereof. (Second Am. PCRA Pet. ¶¶12-13; Br. Supp. 9-10.) However, the PCRA Court determined that:

> [Petitioner's Brief in Support of the Second Amended PCRA Petition]
> does not address the merits of the alleged ineffectiveness for failing to
> object to the evidence related to prior bad acts [1, 2, 4, 5] listed above. We
> deem such assertions waived since they were not addressed on their merits
> and were simply baldly asserted as a contention of ineffectiveness.
> However, because [Petitioner] mentioned those evidentiary areas as a
> basis for ineffective assistance of counsel, we briefly address why
> defendant did not meet his burden with regard to those issues regardless of
> his failure to brief the matter.

*Commonwealth v. Cruz*, CP-39-CR-003705-2004, slip. op. at 13 (Ct. Com. Pl. Dec. 19, 2011).

On appeal to the Superior Court, Petitioner argued that "the trial court erred in failing to find ineffective assistance of counsel where trial counsel did not object to evidence of bad acts;" yet the analysis pertained exclusively to the introduction of testimony regarding Petitioner's mode of dress and manner of speech. (App. Review Br. 11.) Petitioner further argued that the trial court erred in failing to find trial counsel deficient for not requesting a cautionary instruction as to the admissibility of the prior shooting. (App. Review Br. 9.)

Ultimately, Petitioner did not argue prior bad acts 2, 4, and 5 on appeal and the Superior Court did not address them in its Opinion. *Commonwealth v. Cruz,* 2013 Pa. Super. Unpub. LEXIS 1075 (Pa. Super. 2013). As such, they are unexhausted and procedurally defaulted, and no cause exists to excuse the default.

> **b.    Petitioner's mode of dress and manner of speech was
> adequately addressed by the Magistrate**.

Petitioner next claims that "[t]he Magistrate Judge erred by only addressing the prior shooting and the fact that [Petitioner] drove without a license, insurance, title or license plate." (Objs. 5) (citing R&R 15-16).  However, the Magistrate did address prior bad act 3 in Section II(C)(ii) of the R&R, dealing with prosecutorial misconduct.[4]  Petitioner's objection to this

---

[4] Although the Magistrate collectively addressed prior bad act 3 and Petitioner's prosecutorial misconduct claim, this Court understands Petitioner's claims as separate, albeit related, claims. As such, this Court shall address these claims independently.

portion of the R&R encompasses both his prosecutorial misconduct claim and his third prior bad act claim. (Objs. 6-8.)

The PCRA Court found that although the questions at issue relating to how Petitioner spoke and dressed outside the courtroom were not relevant to the charges against him, they did not prejudice Petitioner such that the outcome would have been different. *Commonwealth v. Cruz*, CP-39-CR-003705-2004, slip. op. at 16 (Ct. Com. Pl. Dec. 19, 2011). Thereafter, appellate PRCA counsel raised this claim on appeal to the Superior Court. (App. Review Br. 11-12.) The Superior Court re-characterized Petitioner's claim, stating "[Petitioner's] argument that this testimony amounts to bad acts evidence is misguided—what he really argues is that the evidence was inadmissibly prejudicial." *Commonwealth v. Cruz*, 2013 Pa. Super. Unpub. LEXIS 1075, at *8 (Pa. Super. Ct. 2013). In affirming the lower court, the Superior Court held that trial counsel was not ineffective for "failing to object to the testimony of [Petitioner's] out-of-court behavior," reasoning that said testimony did not "inflame the jury to decide the case on that evidence and not legal propositions." *Commonwealth v. Cruz*, 2013 Pa. Super. Unpub. LEXIS 1075, at *8 (Pa. Super. Ct. 2013) (internal quotations and citations omitted).

As discussed above in Section IV(a)(i)(1), the evidence against Petitioner was substantial: (1) Petitioner testified that he shot Williams; (2) a forensic pathologist testified that one of the bullets hit Williams in the lung causing collapse, bleeding and clotting; and, (3) Williams died as a result. Under these circumstances, this Court agrees with the Magistrate Judge that trial counsel's failure to object to the admissibility of the evidence at issue did not affect the results of the proceeding "given the insignificance of the [testimony], weighed against the strength of the evidence against petitioner."[5] (R&R 17.)

---

[5] This Court notes that out of approximately 100 pages of transcribed cross examinations, only two references on two separate pages pertain to how Petitioner talked and dressed. (PCRA Hr'g Tr. 36.)

Accordingly, Petitioner's objection is overruled.

To the extent Petitioner argues trial counsel was ineffective for failing to request a cautionary instruction as to the use of this information, his argument fails. The Pennsylvania Supreme Court has held:

> In the context of an ineffectiveness claim, counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute per se ineffectiveness; "[r]ather, in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel." *Commonwealth v. Buehl*, 658 A.2d 771, 778 (1995) (plurality).

*Commonwealth v. Weiss*, 81 A.3d 767, 798 (Pa. 2013). To prevail on a claim of ineffective assistance of counsel in Pennsylvania, Petitioner must show: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002) (citing *Commonwealth v. Pierce,* 786 A.2d 203, 213 (Pa. 2001); *Commonwealth v. Kimball,* 724 A.2d 326, 333 (Pa. 1999)). Petitioner has not made any showing that the outcome of his trial would have been different had trial counsel requested a cautionary instruction.

  c.   **The Magistrate did not err for failing to address the cumulative effect of the prior bad acts evidence because the claim is procedurally defaulted.**

Petitioner next argues that the "Magistrate Judge fail[ed] to address . . . the cumulative effect of the [prior bad acts] evidence…" (Objs. 6.) However, this claim was not presented for review in state court; rather, it was raised for the first time in Petitioner's §2254 Petition. (Pet'r's Mem. Law 11.) Because Petitioner's "cumulative error argument constitutes a standalone constitutional claim subject to exhaustion and procedural default," it should have been presented

to the state courts so as to provide a basis for habeas relief. *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 541 (3d Cir. 2014), *cert. denied, Collins v. Wetzel*, 135 S. Ct. 454 (2014). As such, this claim is unexhausted, procedurally defaulted and no exceptions excuse the default.

> ### ii.  Prosecutorial Misconduct
>
> #### a.  Petitioner's claim that trial counsel was ineffective for failing to object to incidents of prosecutorial misconduct is procedurally defaulted and *Martinez* does not excuse the default.

Petitioner alleges that trial counsel was ineffective for failing to object when the prosecutor "began asking him questions about how he talked and dressed 'out on the street.'" (Objs. 6.) Petitioner further argues that the prosecutor's comments about Petitioner's manner of dress during closing argument were improper and trial counsel should have objected. (Objs. 6.) Petitioner raised this claim in his Seconded Amended PCRA Petition but did not address its merits in his Brief in Support. (Second Am. PCRA Pet. ¶¶12-13 at 2-3; Br. Supp. 10-11.) Furthermore, Petitioner failed to raise this claim on appeal to the Superior Court; a prerequisite for federal habeas review. Therefore, the claim is unexhausted, procedurally defaulted and no exceptions excuse the default.

In an effort to circumvent the default, Petitioner argues that PCRA Counsel was ineffective "for failing to raise this substantial claim," and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) should apply to Petitioner's claim. (Pet'r's Mem. Law 24.) In *Martinez*, the Supreme Court held that "[w]here, under state law, claims of ineffective assistance of trial counsel *must be raised in an initial-review collateral proceeding*, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel was ineffective." *Martinez,* 132 S.

Ct. at 1320 (emphasis added). The failure of PCRA counsel to raise an ineffective assistance of trial counsel claim in an initial review collateral proceeding can establish cause if: (1) PCRA counsel's failure constitutes ineffective assistance of counsel under *Strickland*; and, (2) the underlying ineffective assistance of trial counsel claim is "substantial" and "has some merit." *Martinez*, 132 S. Ct. at 1319; *see also Glenn v. Wynder*, 743 F.3d 402, 409-10 (3d. Cir. 2014).

In this particular claim, the "failure" at issue is PCRA counsel's failure to preserve a challenge that trial counsel was ineffective for failing to object to the prosecutor's questions about Petitioner's speech and manner of dress. Upon consideration of the claim *de novo*, this Court finds the underlying ineffectiveness claim to be meritless, therefore Petitioner's layered ineffectiveness claim fails.

> **b.     Petitioner has not shown that he was prejudiced by trial counsel's failure to object to the prosecutor's line of questioning and closing statement.**

The Magistrate Judge found that while trial counsel admitted his failure to object to the prosecutor's line of questions was a mistake, Petitioner did not prove prejudice. (R&R 17.) Petitioner has objected to the Magistrate's reasoning, arguing that the Magistrate Judge failed to "consider the totality of the evidence before the judge or jury." (Objs. 7) (citing *Strickland*, 466 U.S. at 2069)). Petitioner contends there was not enough evidence to support a finding of murder in the first degree and by allowing the prosecutor's remarks, trial counsel undermined Petitioner's self-defense theory and his credibility before the jury. (Objs. 7.) Petitioner arrives at the conclusion that but for trial counsel's deficiency, the outcome of the trial would have been different. (Objs. 8.)

The Supreme Court has held that prosecutorial misconduct is insufficient to overturn a conviction unless it "so infected the trial with unfairness as to make the resulting conviction a

denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 169 (1986). It is not enough to show that a prosecutor's remarks were inappropriate; rather a reviewing court must "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant" to determine if the misconduct infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 694 (1974)). Viewed under this standard, the prosecutor's comments and closing remarks did not deprive Petitioner of a fair trial.

### iii. Petitioner's claim that trial counsel was ineffective for failing to object to a jury instruction is procedurally defaulted and *Martinez* does not excuse the default.

Petitioner further claims trial counsel was ineffective for failing to object to the trial court's jury instruction "allowing the jury to infer that the use of a deadly weapon on a vital part of the victim's body could establish the specific intent to kill."[6] (§ 2554 Petition 7A ¶ 3; Objs. 8.) Petitioner did not argue this claim on appeal to the Superior Court, therefore, the claim is unexhausted, procedurally defaulted and no exceptions excuse the default. Although *Martinez* applies, the underlying ineffectiveness claim is meritless and therefore Petitioner's layered ineffectiveness claim fails.

---

[6] Petitioner asserts "[t]his claim was not meritless and the Magistrate Judge should have held a hearing to determine whether the claim was procedurally defaulted." (Objs. 9.) Petitioner makes this same argument in Objections 5-7 and 9. (Objs. 9, 11-14.) Similarly, in Petitioner's "Miscellaneous Objections" section, he asserts "The Magistrate Judge's order denying a request for an evidentiary hearing on whether the claims for relief are procedurally defaulted is clearly erroneous and contrary to law." (Objs. 14.) This Court will address all of Petitioner's objections to the Magistrate's denial of an evidentiary hearing in its discussion of Miscellaneous Objection 2.

### a.    Petitioner has not shown that the trial court's jury instruction was improper.

With regard to the specific intent charge at issue, the Magistrate found Petitioner's claim meritless because "Pennsylvania's appellate courts have unequivocally ruled that this jury instruction is proper." (R&R at 18) (citing *Commonwealth v. Washington*, 927 A.2d 586, 608 (Pa. 2007); *Commonwealth v. Murphy*, 739 A.2d 141, 150 (Pa. 1999); *Commonwealth v. Spotz*, 716 A.2d 580, 583 (Pa. 1998)).  Petitioner objects, arguing that "even if the jury instruction created just a permissible presumption, it is reasonable to believe the jury would have used it to find an intent to kill, without evaluating all of the evidence." (Objs. 9.)

In support of his contention, Petitioner quotes *Connecticut v. Johnson*, 460 U.S. 73 (1983) as follows, "Because a . . . presumption eases the jury's task, there is no reason to believe the jury would have deliberately undertaken the more difficult talk of evaluating the evidence of intent." (Objs. 8-9.) However, in so doing, Petitioner omits one critical word – "conclusive." The *Johnson* Court spoke about conclusive or mandatory inferences; *not permissive*. *Johnson*, 460 U.S. at 85. As the Magistrate made clear, and as Petitioner recognized in his objections, the inference at issue in the jury instructions from Petitioner's trial is permissive.[7] Thus, Petitioner's reliance on *Johnson* is misplaced.  Moreover, Petitioner's reliance on *Leary v. United States*, 395 U.S. 6 (1969) is similarly misplaced, as that case also involves conclusive or mandatory inferences. As such, both *Johnson* and *Leary* are not applicable.

---

[7] The instruction reads:
> If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you *may* regard that as an item of *circumstantial evidence from which you may, if you choose,* infer that the defendant had the specific intent to kill.

 (Trial Tr. vol. 4, 852, 877) (emphasis added).
> The Magistrate noted, "This instruction did not require the jury to make the inference of the specific intent to kill from defendant's use of a deadly weapon on a vital part of the victim's body; it merely *permitted* the jury to make the inference." (R&R 18) (emphasis added).

Permissive inferences "suggest[] to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985) (citations omitted). The jury instructions from Petitioner's trial explicitly stating that the jury "*may, if you choose,* infer that the defendant had the specific inten[t] to kill" cannot be construed as mandatory or conclusive. (Trial Tr. vol. 4, 852) (emphasis added). As such, trial counsel was not ineffective for failing to object to the trial court's jury instruction. Similarly, in applying *Martinez*, PCRA counsel cannot be considered ineffective under *Strickland* for failing to bring a meritless claim. Taken together, the Magistrate did not err by denying Petitioner's meritless claim.

This objection is overruled.

> ### iv. Petitioner's claim that PCRA counsel failed to present a diminished capacity defense is procedurally defaulted and *Martinez* does not excuse the default.

Petitioner contends that trial counsel was ineffective for failing to "investigate [his] psychiatric history and present a diminished capacity defense." (§ 2254 Pet. 7A ¶ 4; Objs. 9.) Petitioner goes on to say that he "raised the claim in his *pro se* PCRA Petition and PCRA counsel failed to develop [the] claim." (PCRA Pet. 12; Pet'r's Mem. Law 25; Pet'r's Resp. 5-7.) However, Petitioner did not argue this claim on appeal to the Superior Court and therefore, the claim is unexhausted, procedurally defaulted and no exceptions excuse the default.[8] Although

---

[8] Petitioner was assigned counsel–Attorney Robert Long–who filed an Amended PCRA Petition alleging trial counsel's failure to investigate or present a diminished capacity defense. (Am. PCRA Pet. ¶ 11(b).) In addition, Attorney Long requested, and was granted, leave to hire Dr. Frank M. Dattilio, Ph.D to evaluate Petitioner and prepare a report.  During the course of the evaluation, Dr. Dattilio requested Petitioner's medical records in order to conduct a Comprehensive Diagnostic Evaluation, a battery of psychological tests, extensive records review, as well as collateral contacts with family and legal counsel. Thereafter, Petitioner retained Attorney John J. Waldron, who filed Petitioner's Second Amended PCRA Petition and Brief in Support but failed to raise this claim at the PCRA Hearing. Finally, Attorney Kimberly F. Makoul was assigned to handle Petitioner's Superior Court appeal and her brief made no mention of diminished capacity. (App. Br. 5-12.)

*Martinez* applies, the underlying ineffectiveness claim is meritless and therefore Petitioner's layered ineffectiveness claim fails. Upon consideration of these issues *de novo*, this Court overrules the objection.

### a.   Petitioner has not overcome the presumption that trial counsel's performance was sound trial strategy.

The Magistrate found that trial counsel was not ineffective for presenting a trial strategy contrary to Petitioner's wishes at the time of trial. (R&R 19.) Petitioner objects on the basis that "[b]y recommending that the claim be dismissed as meritless . . . the Magistrate Judge eliminated any possibility . . . of developing the factual basis of the claim." (Objs. 9.)

During Petitioner's PCRA Hearing, trial counsel testified that after discussing "all of the possible defenses" with Petitioner, they mutually agreed on a self-defense approach because Petitioner "wanted a defense that would allow him to go home." (PCRA Hr'g Tr. 27.) In this regard, pursuing a diminished capacity defense would have been inconsistent with Petitioner's interest in full acquittal. *See Commonwealth v. Williams*, 980 A.2d 510, 527 (Pa. 2009) ("Diminished capacity is a limited defense, which does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent . . . a defendant asserting a diminished capacity defense admits responsibility for the underlying action[.]") (citing *Commonwealth v. Gibson,* 951 A.2d 1110, 1131-32 (Pa. 2008)).

Trial counsel further testified that he was unaware of any mental health issues affecting his client:

> There was no diminished capacity in my mind. There was [sic] no mental health issues that I saw. If there had been – if I had thought that here were mental health issues, I would have gone in a wholly other direction I think. I would have had Dr. Dattilio involved in this case.

(PCRA Hr'g Tr. 48.)

Based on Petitioner's wishes at the time of trial, Petitioner has not overcome the presumption that trial counsel's performance was sound trial strategy as required under *Strickland*. As such, the Magistrate did not err in his findings. Moreover, Petitioner's claim fails under *Martinez* because PCRA counsel was not ineffective under *Strickland* for failing to bring a meritless claim. Accordingly, the objection is overruled.

> **v.   Petitioner's claim that trial counsel was ineffective for failing to call witnesses is procedurally defaulted and *Martinez* does not excuse the default.**

Petitioner contends that trial counsel was ineffective for failing to call Khadaffi Miller, Marcus Suarez, Dean Ocasio, Joanna Negrete, and other character witnesses who "would have supported his claim of self-defense." (§ 2254 Pet. 7A ¶ 5; Objs. 9.) Specifically, Petitioner states that "these witnesses knew of the events leading up to the shooting," and "would have corroborated that [Mr.] Williams was the aggressor throughout the whole situation and that [Mr.] Williams had a gun that night as well." (Objs. 10.) Petitioner arrives at the conclusion that deciding not to call said witnesses was an "omission" by trial counsel and cannot be viewed as objectively reasonable. (Objs. 10.) Although raised in his Amended and Second Amended PCRA Petitions, the PCRA Court did not address this claim in its Opinion.[9] (Am. PCRA Pet. ¶11(d)(i)–(v); Second Am. PCRA Pet. ¶14(a)–(e) at 3.) Furthermore, Petitioner did not argue this claim on appeal to the Superior Court, and therefore, the claim is unexhausted, procedurally defaulted, and no exceptions excuse the default. Although the claim was not addressed in the PCRA Court Opinion and *Martinez* applies, the underlying ineffectiveness claim is meritless and the objection is overruled.

---

[9] The PCRA Court did, however, hear testimony about this claim during the hearing. (PCRA Hr'g Tr. 41-43.)

### vi.   Petitioner has not sustained his burden under Pennsylvania's five-prong ineffectiveness test for failure to call a witness.

The Magistrate found that under *Strickland*, (1) trial counsel's decision not to call certain witnesses was trial strategy; and, (2) Petitioner failed to show prejudice. (R&R 21-22.) In his Objections, Petitioner argued that the Magistrate "did not consider or acknowledge the affidavit by Mr. Suarez to support this claim."[10] (Objs. 10.)

In Pennsylvania, to prevail on a claim of ineffective assistance of trial counsel for failure to call a witness, the appellant must show:

> (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Commonwealth. v. Fulton*, 830 A.2d 567, 572 (Pa. 2003) (citations omitted). Although this standard is not identical to the *Strickland* standard, the Third Circuit has held that "the Pennsylvania test is not contrary to the test set forth in *Strickland*." *Moore v. DiGuglielmo,* 489 F. App'x 618, 626 (3d Cir. 2012) ("The five requirements set forth by the Pennsylvania Supreme Court would necessarily need to be shown to prevail under *Strickland* on a claim of this nature.") Petitioner did not meet his burden. *See Rolan v. Vaughn,* 445 F.3d 671, 681 (3d Cir. 2006) (finding a trial attorney ineffective for failing to investigate a self-defense witness who gave testimony and submitted an affidavit establishing his willingness to testify on behalf of Petitioner). Even if trial counsel should have called said witnesses on Petitioner's behalf,[11]

---

[10] Petitioner admits that "PCRA Counsel had a private investigator contact Suarez's attorney at the time, who reported that Suarez did not want to get involved." (Pet'r's Mem. Law 26.)

[11] As the Court in *Porter v. Horn*, 276 F. Supp. 2d 278 (E.D. Pa. 2003) made clear:

> Attorneys are not required to call every witness suggested to them; their expertise leads them to choose only the witnesses likely to assist the case. Indeed, this is precisely the type of strategic decision which the Court in *Strickland* held to be protected from second-

Petitioner must show that absence of the testimony prejudiced Petitioner and that the outcome at trial would have been different. *Fulton*, 830 A.2d at 291; *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990).

Petitioner's contention that "trial counsel had no objectively reasonable strategic basis for failing to call [Khadaffi Miller, Marcus Suarez, Dean Ocasio, Joanna Negrete, and other character witnesses]" is belied by the record. (Objs. 11.) During the PCRA hearing, trial counsel testified that he and Petitioner's then girlfriend, Damaris Ortiz, asked "certain people to come and be witnesses for [Petitioner] and they didn't want to get involved." (PCRA Hr'g Tr. 20.) Trial counsel further testified that he "went looking for witnesses to help [Petitioner] with his trial, but [] couldn't get any cooperation at that time." (PCRA Hr'g Tr. 20.)

With regard to Mr. Miller and Mr. Suarez, trial counsel stated that he made a strategic decision not to call them as witnesses because they were identified as bringing firearms to the fight behind 7-Eleven on the night Mr. Williams was shot. (PCRA Hr'g Tr. 42.) Thus, trial counsel reasoned that surrounding "[Petitioner] with the people who . . . lied or any other people who compromised his environment . . . would have weakened [Petitioner's] attempt at explaining how truly frightened he was." (PCRA Hr'g Tr. 22-23.) Trial counsel was also concerned about jury prejudice because "[Petitioner] was surrounded by people who had gone to prison, had criminal records." (PCRA Hr'g Tr. 41.)

Similarly, trial counsel did not call Joanna Negrete or Nina Cosco because "there were things about their testimony [during grand jury proceedings] that could suggest they were deceitful or lying." (PCRA Hr'g Tr. 42.) The Magistrate determined that "trial counsel made the strategic choice to preclude the testimony of these witnesses because he believed it important to

guessing. In order to support a charge of inadequate representation, mere criticism of a tactic or strategy is not in itself sufficient.

*Id.* at 355–56 (internal quotations and citations omitted).

insulate petitioner from people who previously had been dishonest with the authorities." (R&R 21) (citing PCRA Hr'g Tr. 41-43). Based upon its independent review of the record, this Court finds no error in the Magistrate's determination.

With regard to the undeveloped claims related to Dean Ocasio and other unnamed character witnesses, as previously mentioned, trial counsel testified that he unsuccessfully tried to locate character witnesses on Petitioner's behalf.  Petitioner's bald assertion that unknown and unnamed potential character witnesses would have testified on his behalf does little, if anything, to meet the five-prong ineffectiveness test for failure to call a witness. Without more, Petitioner cannot show that he was prejudiced by the absence of these unknown witnesses at trial or that trial counsel was ineffective for not calling said witnesses.

Because Petitioner has not overcome the presumption that trial counsel's performance was sound trial strategy as required under Pennsylvania's five-prong ineffectiveness test for failure to call a witness, his claim is meritless and the Magistrate did not err in his findings.

This objection is overruled.

> **vii.    Petitioner's claim that trial counsel failed to request a jury instruction regarding prior inconsistent statements is procedurally defaulted and *Martinez* does not apply to excuse the default.**

Petitioner asserts that trial counsel should have requested a jury instruction "on the legal effect of the prior inconsistent statements of James Douglas and Nelissa[12] Morales." (§ 2254 Pet. 7A ¶ 6; Objs. 11.) Specifically, Petitioner contends that "[t]rial counsel failed to request a jury

---

[12] The record as to the spelling of Ms. Morales's first name is inconsistent. PCRA Counsel's briefs refer to Ms. Morales as "Melissa," as do the notes of testimony from the PCRA hearing. Petitioner, on the other hand, refers to Ms. Morales as "Nelissa." This Court adopts Nelissa as the appropriate spelling of Ms. Morales's first name. (Trial Tr. vol. 2, 312.) Where state court filings refer to "Melissa," this court understands the record as referring to Nelissa Morales.

instruction informing the jury that they could consider the [inconsistent] statements as substantive evidence not just impeachment evidence." (Pet'r's Mem. Law 29.)  Although raised in his Second Amended PCRA Petition, the PCRA Court did not address this claim in its Opinion.[13] (Second Am. PCRA Pet. ¶15 at 4.) Furthermore, Petitioner did not argue this claim on appeal to the Superior Court.  Therefore, the claim is unexhausted, procedurally defaulted and no exceptions excuse the default. Although *Martinez* applies, the underlying ineffectiveness claim is meritless and Petitioner's layered ineffectiveness claim fails.

### a.    The trial court's jury instruction was proper under relevant Pennsylvania law.

The Magistrate determined that under Pennsylvania law, the trial court's instruction was not in error because it did not preclude consideration of the prior inconsistent statements as substantive evidence. (R&R 22) (citing *Commonwealth v. Howard*, 645 A.2d 1300 (Pa. 1994)). This Court agrees. Petitioner objects to the Magistrate's finding that his claim lacks merits, arguing that reliance on Pennsylvania state law is misplaced because he "did not raise a state law claim." (Objs. 11.) Rather, Petitioner asserts that he raised his claim under the Sixth Amendment. (Objs. 11.) Petitioner misunderstands the Magistrate's state law analysis as to the underlying claim regarding the propriety of the jury instruction and the *Strickland* analysis as to trial counsel's ineffectiveness.

In *Commonwealth v. Blount,* 564 A.2d 952, 957 (Pa. Super. 1989), the Pennsylvania Superior Court held "it is enough that the trial judge does not limit the jury's consideration of [prior inconsistent] statements for impeachment purposes only." *See also Commonwealth v. Bird,* 597 A.2d 1169, 1170 (Pa. Super. 1991) ("[I]t was enough that the trial court did not instruct the jury that the [prior inconsistent] statements could *only* be considered for impeachment

---

[13] The PCRA Court did, however, hear testimony about this claim during the hearing. (PCRA Hr'g Tr. 13-16; 44-45.)

purposes") (emphasis in original). Petitioner does not point to any instruction by the trial court directing that the jury could *only* consider James Douglas and Nelissa Morales's prior inconsistent statements for impeachment purposes, and not as substantive evidence. Because the court did not preclude the jury from considering these statements as substantive evidence, there was no error in the instruction and therefore no basis for an objection by counsel. *Blount*, 564 A.2d at 957. Therefore, the court's instruction was not improper and Petitioner has failed to demonstrate that this claim has arguable merit. Ultimately, trial counsel was not ineffective for not requesting a jury instruction as to the use of prior inconsistent statements as substantive evidence. As such, PCRA counsel was not ineffective for failing to raise a meritless claim and Petitioner's objection is overruled.

> **viii.    Trial counsel was not ineffective for failing to request an imperfect self-defense or unreasonable belief voluntary manslaughter instruction.**

The underlying complaint of Petitioner's next objection is that trial counsel was ineffective for failing to "request a jury instruction regarding unreasonable belief voluntary manslaughter and objecting to the instruction on provocation, which was not supported by the record." (§ 2254 Pet. 7A ¶ 7; Objs. 12.) Petitioner properly brought this claim before the PCRA Court. (Second Am. PCRA Pet. ¶16 at 4; Br. Supp. PCRA 5-7) The PCRA Court found that "the unreasonable basis/imperfect self-defense was not pursued in an effort to bolster the defense the defendant wished to pursue" and therefore trial counsel's strategy was reasonable and his assistance was not ineffective. *Cruz*, CP-39-CR-003705-2004, slip. op. at 7-10 (Ct. Com. Pl. Dec. 19, 2011). The PCRA Court noted that the defendant made clear he wanted a defense that would allow for complete acquittal and not one that would result in the possibility of more time in jail. *Id.* at 9 (citing PCRA 26-28). On appeal, the Superior Court affirmed, holding that

Petitioner's claim was meritless because he "failed to establish that counsel did not have a reasonable trial strategy for failing to request an unreasonable belief manslaughter jury instruction." *Commonwealth v. Cruz*, 2013 Pa. Super. Unpub. LEXIS 1075, at *8 (Pa. Super. Ct. 2013).

Because the Superior Court reached the merits of this issue, a petition for habeas corpus may only be granted if Petitioner can prevail under 28 U.S.C. § 2254(d). This Court focuses on the "unreasonable application" clause of 2254(d)(1). The Superior Court affirmed the PCRA Court, holding that Petitioner failed to establish that trial counsel's strategy was not reasonable because under Pennsylvania state law, "the decision to seek a jury instruction implicates a matter of trial strategy." *Commonwealth v. Cruz*, No. EDA 2012, slip op. at 6 (Pa. Super. Ct. 2013) (internal quotations and citations omitted). At the PCRA Hearing, trial counsel explained that he believed there were arguments to be made for self defense, imperfect self defense, provocation, and manslaughter. (PCRA Hr'g Tr. 17.) However, Petitioner wanted a trial strategy that would result in full acquittal and not more jail time.  (PCRA Hr'g Tr. 26-27; 30; 46.) Trial counsel testified he "discussed with José . . . all the possibilities that exist from shooting someone from behind and I thought that self-defense was weak – I thought it was a weaker approach. But [Petitioner] wanted a defense that would allow him to go home." (PCRA Hr'g Tr. 27.) Trial counsel memorialized his concerns in a letter dated November 13, 2005.[14] The letter states in relevant part:

> While I am ready to try this case and believe I will be able to make an
> argument for you regarding self-defense, I want to remind you that it is

---

[14] Trial attorney James Nechin's letter is not part of the state court record received by this Court. However, he discusses the letter during his testimony at the PCRA Hearing and Petitioner does not dispute the authenticity of the letter in any of his filings. (PCRA Hr'g Tr. 28-30.) Additionally, Judge McGinley referenced same and reproduced portions of the letter in her Opinion denying Petitioner's Second Amended PCRA Petition. *Commonwealth v. Cruz*, CP-39-CR-003705-2004, slip. op. at 9 (Ct. Com. Pl. Dec. 19, 2011).

> not, in my opinion, a strong argument. My strongest argument will be for
> voluntary manslaughter. That charge will get you 20 years.

*Commonwealth v. Cruz*, CP-39-CR-003705-2004, slip. op. at 9 (Ct. Com. Pl. Dec. 19, 2011).

Trial counsel also testified that in trying for a provocation instruction, he hoped that the jury would "see that [Petitioner] was in a situation where he couldn't get out, and the only way out was to shoot his way out. And that was based on the perception he had; and that perception was colored by the entire history that he had with [] the deceased." (PCRA Hr'g Tr. 45.) Ultimately, in keeping with Petitioner's wishes, trial counsel presented a defense "to the exclusion, reasonably or unreasonably, of other alternatives because it may have weakened [his] argument in the closing to the jury…'" (PCRA Hr'g Tr. 45-46.)

In light of Petitioner's wishes, it cannot be said that trial counsel rendered constitutionally deficient service for not requesting an imperfect self-defense/unreasonable belief voluntary manslaughter jury instruction. As such, Petitioner failed to establish deficient performance under *Strickland*. Furthermore, in applying § 2254(d)(1) deference to the Superior Court's disposition, this Court finds it was well within the bounds of a reasonable judicial determination for the state court to conclude the same. *Richter*, 562 U.S. at 106.

Next, the Magistrate found that trial counsel's decision not to seek a jury instruction was based on reasonable trial strategy and that Petitioner failed to show that the Superior Court's disposition "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.'" (R&R 24) (quoting 28 U.S.C. § 2254(d)(1)). Petitioner opposes this finding, arguing that the Magistrate: (1) failed to independently analyze the underlying claim; and, (2) failed to analyze whether the Superior Court's decision was contrary to clearly established Federal law. (Objs. 12.) Petitioner further

argues that deference "does not imply abandonment or abduction of judicial review." (Objs. 12) (quoting *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

Contrary to Petitioner's contention, his claim was properly reviewed by the Magistrate under the doubly deferential standard discussed above. As to Petitioner's argument that the Magistrate failed to analyze his claim under 28 U.S.C. § 2254(d)(1), his objection fails. First, the Magistrate considered the reproduced portions of the Superior Court disposition finding trial counsel's decision not to request an imperfect self-defense or unreasonable belief voluntary manslaughter instruction reasonable because it was based on Petitioner's insistence that trial counsel pursue a trial strategy that would result in full acquittal. (R&R 23-24; *Commonwealth v. Cruz*, No. EDA 2012, slip op. at *5-6 (Pa. Super. Ct. 2013)). Next, the Magistrate analyzed the Superior Court's disposition in the context of federal law, stating "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by under hoc determinations that a different trial strategy would have fared better." (R&R at 24) (quoting *Rolan,* 445 F.3d at 681-82) (emphasis in original). Taken together, the Magistrate properly analyzed Petitioner's claim under U.S.C. § 2254(d)(1) and Petitioner's objection is overruled.

### ix.   Petitioner's claim that trial counsel failed to request sequestration of government witnesses is procedurally defaulted and *Martinez* does not excuse the default.

Petitioner's states that trial counsel was "ineffective for failing to request that Commonwealth witnesses, Nelissa Morales and Lisa Williams, be sequestered before their testimony." (Objs. 13.) Although raised in his Amended and Second Amended PCRA Petitions, the PCRA Court did not address this claim in its Opinion.[15] (Am. PCRA Pet. ¶11(e); Second Am. PCRA Pet. ¶19 at 4–5.) Furthermore, Petitioner did not argue this claim on appeal to the

---

[15] The PCRA Court did, however, hear testimony about this claim during the hearing. (PCRA Hr'g Tr. 17-18; 47-48.)

Superior Court. Therefore, the claim is unexhausted, procedurally defaulted, and no exceptions excuse the default.  Although *Martinez* applies, the underlying ineffectiveness claim is meritless, thereby rendering Petitioner's layered ineffectiveness claim same.

> ### a.   Petitioner was not prejudiced by trial counsel's failure to sequester witnesses.

The Magistrate found Petitioner's claim as to trial counsel's ineffectiveness unpersuasive because the record revealed that Nelissa Morales and Lisa Williams testified to different events. (R&R 25.) Although the Magistrate did recognize that there was a slight overlap—namely, that both witnesses mentioned the earlier shooting of Williams in the foot by Petitioner—the overlap was of no consequence and Petitioner suffered no prejudice. (R&R 25.) However, Petitioner argues that "[Ms. Morales and Ms. Williams] were given the opportunity to shape their testimony in accord with any of the witnessed [sic] they heard prior to getting on the stand."[16] (Objs. 13.) Petitioner concludes that "[c]onsidering the totality of the evidence before the jury, if either witness changed their testimony in accord [sic] with the evidence they heard, this would have affected *all the factual findings of the jury*." (Objs. 13) (emphasis added). Because it is clear from the record that Ms. Morales's testimony[17] was different from testimony given by Ms. Williams,[18] the court will address Petitioner's contention that said witnesses shaped their testimony based on information from prior witnesses.

"The purpose of sequestration is to prevent a witness from molding his testimony with that presented by other witnesses." *Commonwealth v. Counterman*, 719 A.2d 284, 299 (Pa. 1998) (citing *Commonwealth v. Henry*, 706 A.2d 313 (Pa.1997)). *See also Gov't of Virgin Islands v. Edinborough*, 625 F.2d 472, 473 (3d Cir. 1980) ("[Sequestration of witnesses]

---

[16] Petitioner does not provide this Court with any evidence or affidavits to support the proposition that Ms. Morales or Ms. Williams were present for any part of the prior witness testimony.

[17] *See* Trial Tr. vol. 2, 312-335.

[18] *See* Trial Tr. vol. 3, 447-458.

prevents the possibility of one witness shaping his testimony to match that given by other witnesses at the trial.") (internal quotation and citation omitted). In this case, the Commonwealth presented witnesses John Smith, Christie Correa, Andrew James Hahn, Gail Abernathy, Mark Gutierrez, Nelissa Morales, James Douglas and Lisa Williams, respectively. Each witness testified to an event substantially different from that of Ms. Morales and Ms. Williams. John Smith and Christie Correa were employed by the Allentown Police Department at the time of the shooting and testified primarily to their role as first responders the night Williams was shot and killed. (Trial Tr. vol. 2, 258-281.) Andrew Hahn and Gail Abernathy lived in the area surrounding the 7-Eleven and testified to hearing gunshots, as well as to the nature of their interactions with police in the aftermath of the shooting. (Trial Tr. vol. 2, 283-299.) Finally, James Douglas testified to how he became involved with Williams, the mutual agreement between Williams and Petitioner to fight behind the 7-Eleven, the fight itself, and the subsequent shooting death of Williams. (Trial Tr. vol. 2, 352-406.)

The testimony of these prior witnesses deals exclusively with the night Williams was fatally shot by Petitioner.  Said testimony did not pertain to the two events about which Ms. Morales and Ms. Williams testified — the sale of the car to Petitioner by Williams and the injury Williams sustained when Petitioner shot him in the foot. Thus, Petitioner's concern that said witnesses "changed their testimony in accord [sic] with the evidence they heard" is unavailing.

With specific regard to witness Mark Gutierrez, said witness testified to selling Williams the Honda Accord at issue in the case, Williams securing title to the car, and problems arising from Williams's sale of the car to Petitioner. (Trial Tr. vol. 2, 258-272.) Mr. Gutierrez's testimony differs from that of Ms. Morales in that Mr. Gutierrez said he did not know to whom Williams sold the car—only that he became aware there was a problem with the sale. (Trial Tr.

vol. 2, 306.)[19]  Mr. Gutierrez also briefly testified that he observed Williams with a cast and crutches, but did not state how Williams sustained an injury to his foot or by whom. (Trial Tr. vol. 2, 306-308.) Ms. Morales' and Ms. Williams' testimony in this regard was much more detailed. (Trial Tr. vol. 2, 321-325; 448-454.) Even if trial counsel was deficient for failing to make a sequestration request during Mr. Gutierrez's testimony, Petitioner does not indicate how Ms. Morales' or Ms. Williams' testimony was tailored as a result of their presence in the courtroom, nor has he shown that trial counsel's deficiency resulted in prejudice under *Strickland* or contravened the interests of justice as required under *Henry*. Absent such a showing, this Court cannot conclude that trial counsel was ineffective. Accordingly, PCRA counsel was not ineffective under *Strickland* for failing to bring a meritless claim.  Petitioner's claim fails under *Martinez* and his objection is overruled.

> **x.      Miscellaneous Objections**
>
> **a.      Petitioner has not shown by clear and convincing evidence that the State Court's factual recitation is incorrect or that the Magistrate Judge erred in his recitation of the facts.**

Section C of Petitioner's Objections contain two "Miscellaneous Objections."  (Objs. 14-15.)  In the first such objection, Petitioner takes issue with "the statement of facts set forth by the Magistrate Judge" because "[t]hey do not accurately portray the events leading up to the shooting." (Objs. 14) (citing R&R 1-2). Petitioner goes on to say that he "was not the aggressor throughout the whole series of events and was threatened, or chased, by Williams on more than once occasion." (Objs. 14.) In response, the Commonwealth contends that because the Magistrate "appropriately derived his statement of facts directly from the Pennsylvania Superior

---

[19] Ms. Morales testified to the nature and details of the car sale to Petitioner, issues arising from the payment and transfer title meeting, as well as the aftermath that occurred once the deal broke down. (Trial Tr. vol. 2, 312-335.)

Court's opinion," the recitation should be presumed correct. (Commw. Resp. 27-28) (citing 28 U.S.C. § 2254(e)). Petitioner further asserts that "[d]eference to State Court factual findings does not allow this Court to simply adopt the facts set forth by the State Courts." (Objs. 14.)

While it is true that "deference accorded a state court's determination of fact is not limitless . . . , the burden is on the habeas petitioner to rebut the presumption of correctness by clear and convincing evidence. It is not enough to decide that the petitioner has advanced a plausible alternative to the factual findings of the State Court." *Washington v. Sobina*, 509 F.3d 613, 621 (3d Cir. 2007) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003); *Martini v. Hendricks*, 348 F.3d 360, 368 (3d Cir. 2003)); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court, a determination of a factual issue made by a State Court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Petitioner does not allege **any** facts entitling him to relief on this claim. This, coupled with the Magistrate's recitation of facts which is substantially similar to those set forth by the Superior Court on direct appeal, requires this Court to presume their correctness under 28 U.S.C. § 2254(e)(1).[20]  As such, his objection is overruled.

### b.        Petitioner is not entitled to an evidentiary hearing

In Petitioner's second Miscellaneous Objection, he argues that an evidentiary hearing is warranted as to Objections 4 – 7 and 9. (Objs. 9, 11-13.) Specifically, Petitioner states, "This claim was not meritless and the magistrate Judge should have held a hearing *to determine whether the claim was procedurally defaulted*." (Objs. 9, 11-13) (emphasis added). For this

---

[20] As set forth in the Factual Background above, this Court has conducted an independent review of the record.  The facts as set forth by the trial court, appellate court, collateral review courts, and Magistrate are all consistent with the evidence of record in this case.

reason, Petitioner contends "[t]he Magistrate's Judge's order denying a request for an evidentiary hearing on *whether the claims for relief are procedurally defaulted* is clearly erroneous and contrary to law." (Objs. 14) (citing Fed. R. Civ. P. 72 (a)) (emphasis added).  Petitioner requests that this Court reject the Magistrate's denial of a request for an evidentiary hearing and review the request *de novo*. (Objs. 14) (citing 28 U.S.C. § 636(b)(1)).

The opening clause of 28 U.S.C. § 2254(e) only applies to prisoners who have "failed to develop the factual basis of a claim in State Court proceedings." "If the prisoner has failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of § 2254(e)(2)." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). The fault requirement asks "whether the petitioner adequately and diligently pursued the factual basis of his claim in State Court. If the petitioner fails in this regard and is therefore "at fault," the bar to relief in section (e)(2) is raised. Otherwise, if the petitioner is not "at fault," the court may exercise its discretion to grant an evidentiary hearing. *Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011) (citing *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000)). "In exercising that discretion, courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id*.

Petitioner requested an evidentiary hearing to determine if his claims are procedurally defaulted, and **not** for the purpose of developing a record that can support any of his claims. Because procedural default is clear from the record, an evidentiary hearing "would not have the potential to advance Petitioner's claims, and thus would not be a warranted use of the court's discretion under AEDPA . . . " *Bowen v. Blaine*, 243 F. Supp. 2d 296, 310–11 (E.D. Pa. 2003).

### V.      Conclusion

For the reasons set forth hereinabove, all of Petitioner's Objections shall be overruled. As for portions of the R&R to which no objection was made, this Court has reviewed the R&R and finds no clear error to exist.  Accordingly, the Magistrate's R&R shall be adopted and Petitioner's request for habeas relief shall be denied.  Because Petitioner failed to make a substantial showing of the denial of any constitutional right, this Court finds that reasonable jurists would not disagree with the instant holding and a Certificate of Appealability shall not issue. *See, e.g.*, 28 U.S.C. § 2253(c)(2); *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).

An appropriate Order follows.

BY THE COURT:


/s/  C. Darnell Jones, II        J.